

FILED
JAMES BONINI
CLERK

'11 OCT 17 PM 3: 38

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **OCCUPY CINCINNATI**<br>**An unincorporated association**<br>**1331 Main St., # 6**<br>**Cincinnati, OH 45220** | Case No. 1:11CV727 <br> (Judge J. DLOTT ) |
| **and** | |
| **SHERRY L. BARON**<br>**3503 Middleton Ln.**<br>**Cincinnati, OH 45220** | |
| **and** | |
| **COULTER LOEB**<br>**425 Old McMillan St.**<br>**Cincinnati, OH 45219** | |
| **and** | |
| **ROBERT PACE**<br>**6451 Meadowvista Ct.**<br>**Cincinnati, OH 45224** | |
| **and** | |
| **MICHAEL BURNHAM**<br>**1709 Pomona Ct.**<br>**Cincinnati, OH 45206** | |
| **Plaintiffs,** | |
| **vs.** | |
| **CITY OF CINCINNATI**<br>**c/o Milton Dohoney, City Manager**<br>**City Hall**<br>**801 Plum Street**<br>**Cincinnati, Ohio 45202** | |
| **and** | |

1

CINCINNATI BOARD OF PARK        :
COMMISSIONERS                   :
950 Eden Park Dr.               :
Cincinnati, OH 45202            :
                                :
and                             :
                                :
WILLIE F. CARDEN, JR., Director :
CINCINNATI BOARD OF PARK        :
COMMISSIONERS                   :
950 Eden Park Dr.               :
Cincinnati, OH 45202            :
                                :
and                             :
                                :
CINCINNATI POLICE               :
DEPARTMENT                      :
310 Ezzard Charles Dr.          :
Cincinnati, OH 45214            :
                                :
and                             :
                                :
JAMES E. CRAIG, Chief           :
CINCINNATI POLICE               :
DEPARTMENT                      :
310 Ezzard Charles Dr.          :
Cincinnati, OH 45214            :
                                :
                   Defendants.  :
                                :

---

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

---

Plaintiffs Occupy Cincinnati, an Ohio unincorporated association, Sherry L. Baron, Coulter Loeb, Robert Pace, and Michael Burnham, for their cause of action against the City of Cincinnati, the Cincinnati Board of Park Commissioners, Willie F. Carden Jr. in his capacity as

Director of the Cincinnati Board of Park Commissioners, Cincinnati Police Department, and James E. Craig, in his capacity as Chief of Police, hereby state as follows:

## I. PRELIMINARY STATEMENT

1)     This is a civil rights action brought by Occupy Cincinnati and four of its individual members challenging on various constitutional grounds:

A) Park Board Rule 21, promulgated by the City of Cincinnati through its Board of Park Commissioners ("Park Board"), which prohibits the use of City Parks for protected speech during the hours of 10:00 p.m. and 6:00 a.m. except with the permission of the Park Board;

B) the denial by Park Board Director Willie F. Carden, Jr. of a request submitted by Plaintiffs for a permit to conduct a political demonstration in Piatt Park; and,

C) the enforcement of Park Board Rule 21 by the Cincinnati Police Department under the direction of Chief James E. Craig through nightly issuance of citations to members of Occupy Cincinnati engaged in political demonstration and expression in Piatt Park after the hour of 10:00 p.m., which has resulted in the chilling of constitutionally protected speech.

## II. JURISDICTION

2)     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § § 2201 and 2202; and by 42 U.S.C. § 1983.  This is a lawsuit authorized by law to redress deprivations, under color of state law, of rights, privileges and immunities secured by the First and Fourteenth Amendments of the United States Constitution.

3)     Venue in this Court is appropriate as the various actions, ordinances, regulations, rules and directives from and for which Plaintiffs seek relief occurred or are being enforced within the Western Division of the Southern District of Ohio.

## III. PARTIES

4)     Plaintiff Occupy Cincinnati is an unincorporated association of individuals headquartered in Cincinnati, Ohio, which was formed by its members for the purposes of organizing for political change, economic justice, and citizen participation in government. Plaintiff Occupy Cincinnati seeks to raise awareness of the issues that it attempts to address by engaging in public protests and marches, by disseminating leaflets and other information to the public, and by engaging other citizens in the process of political dialogue, among other means of constitutionally protected speech.

5)     Plaintiffs Sherry Baron ("Baron"), Coulter Loeb ("Loeb"), Robert Pace ("Pace"), and Michael Burnham ("Burnham"), are natural persons who are individual members of Occupy Cincinnati, and are residents of the City of Cincinnati, Ohio. (Occupy Cincinnati, Baron, Loeb, Pace and Burnham may be collectively referred to herein as "Plaintiffs").

6)     Defendant, the City of Cincinnati, Ohio ("City") is a municipal government and political subdivision in the state of Ohio.

7)     Defendants Cincinnati Board of Park Commissioners ("Park Board") and Cincinnati Police Department ("CPD") are agencies, divisions, or departments of the City, created pursuant to the City Charter and Ohio Revised Code.   The Park Board is vested with

4

authority to promulgate rules and regulations that apply to all public parks in the City of Cincinnati and with issuing permits for gatherings and events in the Cincinnati parks.

8)    Defendant Willie F. Carden Jr. ("Carden") is the Director of the Park Board.

9)    Defendant James E. Craig ("Craig") is the Chief of Police in the City.  He is vested with the authority to enforce all applicable laws within the City of Cincinnati by, among other actions, issuing criminal citations, instituting criminal charges, and effectuating arrests. (City, Park Board, CPD, Carden, and Craig may be collectively referred to as "Defendants").

## IV. FACTS

10)    Occupy Cincinnati was formed by its members in September, 2011 for the purpose of holding a political rally and demonstration in a public park on October 8, 2011. The Occupy Cincinnati group identifies itself as an offshoot of the Occupy Wall Street protest that began in New York City and has spawned like-minded political protests in various cities around the United States.

11)    Occupy Cincinnati obtained a permit to hold a political rally at Fountain Square, Cincinnati's central town square and the quintessential public forum at which various forms of expression have historically been presented, on October 8, 2011 from 4:00 p.m. through 1:00 a.m.  Unlike other public spaces in Cincinnati, Fountain Square is managed by a private development organization, the Cincinnati City Center Development Corporation ("3CDC").  It was 3CDC and not the Park Board that issued the permit for Occupy Cincinnati's demonstration at Fountain Square.

5

12) On October 8, some members of Occupy Cincinnati gathered at Lytle Park in downtown Cincinnati, and marched through the City, arriving at Fountain Square at approximately 4:00 p.m. Hundreds of citizens attended the rally, at which time various speakers addressed the group to discuss political and social issues, and musical entertainment was presented.

13) At 1:00 a.m. on October 8, upon the expiration of the Fountain Square permit, several members of Occupy Cincinnati remained on Fountain Square, where they peacefully continued to engage in protected speech, conducting discussions among themselves and passersby, wearing expressive clothing including buttons and t-shirts, and displaying signs containing slogans and other information about economic and political issues for which the members sought redress.

14) At 3:00 a.m. on October 8, the members of Occupy Cincinnati who remained on Fountain Square were warned by officers from Defendant CPD that Fountain Square was closed for the night, and that the members were subject to citation or arrest if they remained.

15) Upon hearing the warning from the officers from CPD, numerous members of Occupy Cincinnati exited Fountain Square in order to avoid citation or arrest. Many of the members remained on the sidewalk adjacent to Fountain Square, marching continuously. Some members and other persons left the location entirely.

16) Approximately ten (10) members of Occupy Cincinnati remained on Fountain Square after 3:00 a.m. despite the warnings from CPD officers, risking arrest or citation.

17) At approximately 4:00 am, Fountain Square maintenance personnel began power washing the entire area. During this time, the Occupy Cincinnati members remaining on

6

Fountain Square moved out of the way to another part of Fountain Square in order to avoid interfering with the normal operations and maintenance of Fountain Square.

18)     Despite the express warnings from CPD Officers, no member of Occupy Cincinnati was arrested nor issued a citation for having remained on the Fountain Square property.   At 6:00 a.m., upon the re-opening of Fountain Square, the Occupy Cincinnati members marching on the sidewalk re-joined the members who had spent the night at Fountain Square.

19)     On Sunday, October 9, 2011, another organization had received a prior permit to conduct an event on Fountain Square.   In order to avoid interfering with the use of Fountain Square by another party, the members of Occupy Cincinnati marched to Piatt Park, located at 1 Garfied Place, in order to continue the rally and to further engage in constitutionally protected political speech.

20)     Unlike Fountain Square, Piatt Park is a City-owned public park, managed by the Park Board.

21)     The members of Occupy Cincinnati continued their peaceful political demonstration at Piatt Park on Sunday, October 9, 2011, and were joined by additional people through the course of the day.  The members and others who had joined continued to engage in protected speech, conducting discussions among themselves and passersby, wearing expressive clothing including buttons and t-shirts, and displaying signs containing slogans and other information about economic and political issues for which the members sought redress.

22) Late on the night of October 9, 2011, officers from the CPD entered Piatt Park and warned the members of Occupy Cincinnati then present that Piatt Park was closed for the night, and that the members were subject to citation or arrest if they remained.

23) The officers providing this warning cited Park Board Rule 21 ("P.B.R. 21"), which provides:

> RULE 21     Closing Time
>
> The parks shall be closed to the public between 10:00 P.M. and 6:00 P.M. except where otherwise posted on signs and except when different hours are established by resolution of the Park Board or by permit issued to a group by the Park Board for a specific event, and except or [sic] vehicular traffic on through roadways directly connecting to city streets. All persons shall leave the parks at or before closing time.

24) Upon hearing the warning from the officers from CPD, numerous members of Occupy Cincinnati exited Piatt Park and thereby ceased engaging in their desired political expression in order to avoid citation or arrest.

25) Approximately twenty (20) members of Occupy Cincinnati remained at Piatt Park after 10:00 p.m. despite the warnings from CPD officers, risking arrest or citation.

26) At approximately 11:30 p.m. on Sunday, October 9, officers of CPD proceeded to issue criminal citations to those members of Occupy Cincinnati who remained in Piatt Park.

27) The Occupy Cincinnati members fully and peacefully cooperated with the CPD officers, lining up in an orderly fashion, presenting identification, and submitting to photographing by police on site at Piatt Park. No member of Occupy Cincinnati was physically arrested or removed from Piatt Park, and the members remained in the park peacefully, carrying

on political discussions, wearing expressive clothing, and displaying signs containing slogans and other information about economic and political issues for which the members sought redress.

28) Each citation for a violation of P.B.R. 21 carries a fine of $105.00, plus court costs.

29) On Monday, October 10, 2011, the members of Occupy Cincinnati continued their demonstration at Piatt Park, and were joined by additional people through the course of the day (and many members and other persons came and went during this time). The members and other persons who had joined continued to engage in protected speech, conducting discussions among themselves and passersby, wearing expressive clothing including buttons and t-shirts, and displaying signs containing slogans and other information about economic and political issues for which the members sought redress.

30) Following the issuance of citations on October 9, 2011, the members of Occupy Cincinnati sought a permit for Piatt Park, by submitting a written application in the form required by the Park Board ("Permit Application").

31) Some time after 10:00 p.m. on October 10, 2011, officers from the CPD again entered Piatt Park and warned the members of Occupy Cincinnati then present that Piatt Park was closed for the night, and that the members were subject to citation or arrest under P.B.R. 21 if they remained.

32) Just as on the prior night, upon hearing the warning from the officers from CPD, numerous members of Occupy Cincinnati exited Piatt Park and thereby ceased in their desired political expression in order to avoid citation or arrest.

9

33)     On October 10, 2011, some members of Occupy Cincinnati remained at Piatt Park after 10:00 p.m. despite the warnings from CPD officers, risking arrest or citation.

34)     Thereafter, the officers of CPD proceeded to issue citations to those members of Occupy Cincinnati who remained in Piatt Park.

35)     The Occupy Cincinnati members once again fully cooperated with the CPD officers, lining up in an orderly fashion, presenting identification, and submitting to photographing by police on site at Piatt Park. No member of Occupy Cincinnati was physically arrested or removed from Piatt Park on October 10, 2011, and the members remained in the park, carrying on political discussions, wearing expressive clothing, and displaying signs containing slogans and other information about economic and political issues for which the members sought redress.

36)     On October 11, 2011, Occupy Cincinnati received written notice from the Park Board that their Permit Application had been denied on the basis that the park closes from 10:00 p.m. until 6:00 a.m., despite the express provision in P.B.R. 21 permitting the Park Board to extend the closing time provision in its sole discretion. A true and correct copy of the notice is attached hereto as Exhibit A.

37)     The pattern of issuing warnings and criminal citations continued on October 11 and 12 of 2011. The demonstration and political assembly by Occupy Cincinnati members continued throughout the day, and CPD officers appeared at approximately 10:00 p.m. warning that the participants would be subject to citation if they failed to vacate. Some participants left the park upon hearing the warning, thereby self-censoring their political expression, while others remained and continued to engage in political speech and dialogue. Those who remained

10

cooperated with CPD officers to receive citations, but none were physically arrested or removed from Piatt Park. The demonstration then continued into the night and into the daytime hours after the CPD officers left the scene.

38)     On October 13, 2011, the pattern was broken. On October 13, no CPD officers appeared at 10:00 p.m. No warnings were given to the Occupy Cincinnati members or others in Piatt Park, despite their continued presence there and the ongoing demonstration. Occupy Cincinnati members and others continued their demonstration, discussion and expressive conduct through the night and into October 14, 2011.

39)     On October 14, 2011, and thereafter on October 15 and 16, the previous pattern was resumed. The demonstration and political assembly by Occupy Cincinnati members continued throughout the day. CPD officers appeared at approximately 10:00 p.m. warning that the participants would be subject to citation if they failed to vacate. Some participants left the park upon hearing the warning while others remained. Those who remained cooperated with CPD officers to receive citations, but none were physically arrested or removed from Piatt Park. The demonstration then continued into the night after the CPD officers left the scene.

40)     At some point during the continuing demonstration, members of Occupy Cincinnati were contacted by a couple who planned to be married on the night of October 15, 2011 in a business adjacent to Piatt Park. The couple wished to make use of Piatt Park as a setting for a portion of their wedding festivities.

41)     Upon information and belief, the couple had permission from the Park Board to make use of Piatt Park for a portion of their wedding festivities.

11

42)     The members of Occupy Cincinnati cooperated with the couple, vacating the area of Piatt Park where the couple later conducted a portion of their wedding festivities.

43)     On the night of October 15, 2011, no police officers entered the park at any time while the wedding party was present, despite the fact that the wedding went on until approximately 11:30 p.m.  No warnings nor criminal citations were issued to any member of the wedding party.   Only after the wedding ended and the participants departed, did CPD officers arrive at Piatt Park and repeated the now familiar ritual.

44)     As of this filing, approximately 216 citations have been issued to Occupy Cincinnati members or other persons present at the ongoing demonstration.

45)     As of this filing, Occupy Cincinnati members and other persons are subject to fines in excess of $22,000.00 in connection with charges of violating P.B.R. 21.

46)     While the CPD has thus far engaged in a pattern and practice of issuing criminal citations rather than effectuating arrests of Occupy members who engage in political expression past 10:00p.m. at Piatt Park, Chief Craig has gone on record as saying that the City desires an end to the Occupy protest and that "[they] may have to take another plan of action, sooner rather than later," thus suggesting that the CPD may in fact begin physically arresting protestors.

47)     The threat of arrest, citation, and imposition of fines has imposed a "chilling effect", whereby individual members of Occupy Cincinnati and others have feared for their safety, liberty and economic consequences that may be imposed should they choose to exercise fundamental rights of freedom of expression, assembly and of the press.

48)     As a result of these fears, members of Occupy Cincinnati and others have been forced to self-censor their expression by voluntarily refraining from exercising their protected First Amendment rights.

49)     Plaintiff Sherry Baron is an employee of a federal government agency. She has actively participated in the Occupy Cincinnati movement by attending various marches, rallies, and events, but never past 10:00p.m. She fears adverse employment consequences should she be criminally cited for engaging in protected expression in Piatt Park.

50)     Plaintiff Coulter Loeb is an independent freelance photographer and publisher of a website addressing political issues.    He has functioned as a member of the press in documenting and publishing the political protest activities of the Occupy Cincinnati movement. He desires to continue to document the activities of Occupy in the park past 10:00p.m. but has refrained from doing so due to fear of arrest and citation.

51)     Plaintiff Robert Pace is currently unemployed, but has in the past been employed and is currently seeking gainful employment. He has actively participated in the Occupy Cincinnati movement by attending various marches, rallies, and events, but never past 10:00p.m. He fears being cited or arrested for engaging in political expression after 10:00p.m. at Piatt Park because of the potential adverse consequences criminal charges could have on his job search. He also lacks the ability to pay the $105 fine associated with a criminal citation under P.B.R. 21.

52)     Plaintiff Michael Burnham is a professor at an institution of higher learning in the greater Cincinnati area. He has actively participated in the Occupy Cincinnati movement by attending various marches, rallies, and events, but never past 10:00p.m. He fears the adverse

13

consequences of an arrest or citation for engaging in protected expression in the park after 10:00p.m.

53)     Each and every one of Plaintiffs has been placed in fear of the consequences of engaging in protected speech by the threat of citation or arrest.   Among other things, Plaintiffs fear that citation or arrest may endanger their employment status, endanger their ability to obtain future employment, and will impose an expense that will cause them economic hardship.

54)     Each and every one of Defendants wishes to participate in protected speech and association among the members of Occupy Cincinnati gathering at Piatt Park in the evening between the hours of 10:00 p.m, and 6:00 a.m., but has elected not to do so because of the threat of citation or arrest.

55)     But for the enforcement of P.B.R. 21, each of Plaintiffs and others would participate in ongoing political demonstrations by Occupy Cincinnati at Piatt Park between the hours of 10:00 p.m, and 6:00 a.m.

56)     Upon information and belief, and as is authorized by the plain language of P.B.R. 21, the Park Board has on many occasions pursuant to P.B.R. 21 issued permits which authorize the use of City Parks for various activities, including both non-expressive, non-constitutionally protected events like private parties and activities intended to convey an expressive message like musical concerts, between the hours of 10:00 p.m. and 6:00 a.m.   However, the Park Board has without explanation refused to issue such a permit to Occupy Cincinnati and its members.

## COUNT I

57)     Plaintiffs hereby incorporate the foregoing allegations by reference as if the same were fully set forth herein.

14

58)   Piatt Park is a traditional public forum, and regulation of protected speech or free assembly therein is subject to the strictest scrutiny.

59)   P.B.R. 21 is unconstitutional on its face and as applied to Occupy Cincinnati and its members because it grants unbridled discretion to the Park Board to regulate constitutionally protected speech, expressive conduct and assembly without providing any standards by which said discretion is to be exercised.

60)   P.B.R. 21 and the Park Board's exercise of discretion violates Plaintiffs' rights under the First and Fourteenth Amendments of the U.S. Constitution to free speech, freedom of assembly, freedom of association, and freedom of the press.

61)   P.B.R. 21 and the Park Board's exercise of discretion violates Plaintiffs' rights to equal protection under the law because Plaintiffs' permit application has been denied even as other applicants, some with non-expressive purposes, have in the sole, unfettered discretion of the Park Board received special permission to conduct assemblies in City Parks between 10:00 p.m. and 6:00 a.m.

62)   P.B.R. 21 violates Plaintiffs' rights to procedural due process under the Fourteenth Amendment because it fails to afford Plaintiffs any opportunity to contest the Park Board's decision to deny a permit for use of the Park.

63)   Unless operation of P.B.R. 21 is temporarily, preliminarily and permanently enjoined, Plaintiffs will suffer and continue to suffer irreparable harm to their rights of free speech, free association, free assembly and freedom of the press for which no adequate remedy exists at law.

15

64)     P.B.R. 21, the Park Board's exercise of discretion, and CPD's enforcement of the Rule against Plaintiffs violates Plaintiffs' rights under the Ohio State Constitution to free speech, freedom of assembly, freedom of association and freedom of the press.

## COUNT II

65)     Plaintiffs hereby incorporate the foregoing allegations by reference as if the same were fully set forth herein.

66)     In denying Plaintiffs' permit application, and in enforcing P.B.R. 21 through the issuance of citations, Defendants acted under color of law.

67)     The denial of Plaintiffs' Permit Application, and the enforcement of P.B.R. 21 by the issuance of citations and threatened arrests were undertaken by Defendants Carden and Craig within the scope of their respective duties.

68)     The denial of Plaintiffs' Permit Application, and the enforcement of P.B.R. 21 by the issuance of citations and threatened arrests denied to Plaintiffs the rights to expression, speech, assembly, association, and the press that are secured by the Constitution and laws of the United States.

69)     The denial of Plaintiffs' constitutional rights to engage in protected speech, assembly, association and the press is a compensable injury that entitles Plaintiffs to monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Occupy Cincinnati, Sherry L. Baron, Coulter Loeb, Robert Pace, and Michael Burnham, each demand judgment as follows:

1) A declaration from this Court that P.B.R. 21 and its enforcement by the Park Board and Cincinnati Police Department is unconstitutional on its face and as applied to these Plaintiffs, and hence, is illegal and unenforceable;

2) A temporary, preliminary and permanent injunction restraining, prohibiting and enjoining the City of Cincinnati, the Park Board, the Cincinnati Police Department, their agents and employees and all persons in active concert and participation with the City from enforcing, applying and implementing P.B.R. 21 to prevent protected speech, assembly, association or press activities in Piatt Park, and directing the Park Board to issue a permit to Plaintiffs for the lawful exercise of the same;

3) An award of compensatory damages pursuant to 42 U.S.C § 1983;

4) An award of Plaintiffs' costs in this action and their reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

5) For such other and further relief in law and or in equity as this Court may deem just and proper.

Respectfully submitted,

JENNIFER M. KINSLEY (0071629)
Sirkin Kinsley, Co. LPA
810 Sycamore Street, Second Floor
Cincinnati, Ohio 45202
Telephone: (513) 721-4876
Jennifer@sirkinkinsley.com
Trial Attorney for Plaintiffs


J. Robert Linneman (0073846)
Santen & Hughes, LPA
600 Vine St., Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450
JRL@santen-hughes.com
Trial Attorney for Plaintiffs


Geoffrey M. Miller (0075319)
2224 Suffolk St.
Cincinnati, Ohio 45230
Telephone: (513) 884-9399
Geoffreymiller75@yahoo.com
Trial Attorney for Plaintiffs


465166.1

18